UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

PINE MANAGEMENT, INC.,                              Docket No.: 22-cv-02407 (MKV)

                                        Plaintiff(s),
                      -against-

COLONY INSURANCE COMPANY,

                                        Defendant(s).
----------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR JUDGMENT
<u>ON THE PLEADINGS</u>**

RIVKIN RADLER LLP

M. Paul Gorfinkel, Esq. (MPG 2069)
paul.gorfinkel@rivkin.com
Amanda R. Griner, Esq. (ARG 7625)
amanda.griner@rivkin.com
926 RXR Plaza
Uniondale, New York 11556-0926
Phone: (516) 357-3000
Fax: (516) 357-3333

Attorneys for Defendant
Colony Insurance Company

Dated:  Uniondale, New York
          August 9, 2022

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

OVERVIEW ............................................................................................................................... 1

THE H&K LETTER IS PART OF THE PLEADINGS HEREIN ................................................. 2

FACTS ....................................................................................................................................... 2

PERTINENT POLICY PROVISIONS ........................................................................................ 4

LEGAL ANALYSIS ................................................................................................................... 6

STANDARDS FOR A MOTION FOR JUDGMENT ON THE PLEADINGS ............................. 6

      I.      FIRST DISPOSITIVE COVERAGE DEFENSE:  CLAIM
              PRIOR TO THE POLICY PERIOD ...................................................... 8

      II.     SECOND DISPOSITIVE COVERAGE DEFENSE:  PRIOR
              KNOWLEDGE OF WRONGFUL ACT .............................................. 12

      III.    THIRD DISPOSITIVE COVERAGE DEFENSE: "WRONGFUL
              ACTS"  PRIOR TO THE RETROACTIVE DATE ............................. 16

      IV.    NO DUTY TO INDEMNIFY ............................................................. 21

CONCLUSION ......................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009).................................................................................6, 7

*Bell Atlantic Corp. v. Twombly,*
　550 U.S. 544 (2007)....................................................................................6

*EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.,*
　905 F.2d 8 (2d Cir. 1990)..........................................................................21

*Freydl v. Meringolo,*
　2010 WL 3026578 (S.D.N.Y. 2010)...........................................................7

*Glascoff v. OneBeacon Midwest Ins. Co.,*
　2014 U.S. Dist. LEXIS 64858 (S.D.N.Y. 2014)........................................20

*Greenburgh Eleven Union Free School District v. National Union Fire Ins. Co.,*
　304 A.D.2d 334, 758 N.Y.S.2d 291 (1st Dep't 2003) ..............................19

*Harris v. Mills,*
　572 F.3d 66 (2d Cir. 2009)..........................................................................7

*Hayden v. Paterson,*
　594 F.3d 150 (2d Cir. 2010)........................................................................6

*Liberty Ins. Underwriters v. Corpina Piergrossi Overzat & Klar,*
　78 A.D.3d 602, 913 N.Y.S.2d 31 (1st Dep't 2010) ..................................14

*Lively v. WAFRA Inv. Advisory Grp., Inc.,*
　6 F.4th 293 (2d Cir. 2021) ...........................................................................6

*Lynch v. City of New York,*
　952 F.3d 67 (2d Cir. 2020)..........................................................................6

*McCabe v. St. Paul Fire & Marine Ins. Co.,*
　79 A.D.3d 1612, 914 N.Y.S.2d 814 (4th Dep't 2010)...............................10

*National Union Fire Ins. Co. v. Ambassador Group,*
　691 F. Supp. 618 (E.D.N.Y. 1988) ...........................................................20

*Nomura Holding America v. Federal Ins. Co.,*
　629 Fed. Appx. 38 (2nd Cir. 2015)............................................................19

*North River Ins. Co. v. Leifer*,
   2022 U.S. Dist. LEXIS 75134 (S.D.N.Y. April 25, 2022) ..............................................6, 7, 14

*Quanta Lines Ins. Co. v. Investors Capital Corp.*,
   2009 U.S. Dist. LEXIS 117689 (S.D.N.Y. 2009) .....................................................................13

*Sarikaputar v. Veratip Corp.*,
   371 F. Supp. 3d 101 (S.D.N.Y. 2019).........................................................................................7

*Schneider, et al. v. Pine Management, Inc. et al.*,
   No. 654303/2019 (Sup. Ct. New York Cty.) (complaint, Exhibit 2).........................................3

*Seneca Insurance Co. v. Kemper Ins. Co.*,
   133 Fed. Appx. 770 (2d Cir. 2005), (S.D.N.Y. 2004) ......................................................10, 18

*Weaver v. Axis Surplus Ins. Co.*,
   639 Fed. Appx. 764 (2d Cir. 2016), (E.D.N.Y. 2014) ........................................................9, 10

*Zahler v. Twin City Fire Ins. Co.*,
   2006 U.S. Dist. LEXIS 14263 (S.D.N.Y. 2006).......................................................................19

## Other Authorities

Federal Rule of Civil Procedure 10(c) ..........................................................................................1

Federal Rule of Civil Procedure 12(c) .......................................................................................1, 6

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

PINE MANAGEMENT, INC.,                                    Docket No.: 22-cv-02407 (MKV)

                                        Plaintiff(s),

                        -against-

COLONY INSURANCE COMPANY,

                                        Defendant(s).

----------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS**

        Defendant, Colony Insurance Company ("Colony") respectfully submits this

memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(c),

for judgment on the pleadings.

**OVERVIEW**

        This is an action on an insurance contract.  Plaintiff Pine Management, Inc. ("Pine") is

seeking coverage from defendant Colony Insurance Company ("Colony"), under a professional

liability insurance policy, for an underlying lawsuit ("the Schneider Action") against Pine.

        This action places at issue both the duties to defend and to indemnify.  Colony will

demonstrate that, based solely upon the complaint in the Schneider Action and the exhibits

attached thereto ("the Schneider Complaint"),[1] the Schneider Action falls entirely outside the

scope of coverage provided by the Colony policy.  Accordingly, Colony is entitled to judgment

on the pleadings, dismissing this case with prejudice.

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."

1

## THE H&K LETTER IS PART OF THE PLEADINGS HEREIN

The complaint in this action (ECF 1) attaches, as Exhibit 2, the Schneider Complaint, without exhibits.  The Schneider Complaint itself, as originally filed in state court, contains twenty exhibits as attachments.

The parties have stipulated (ECF 21) that Exhibit 2 to the complaint in this action shall be deemed to include the exhibits that were attached to the original Schneider Complaint.

Submitted herewith is a Declaration which attaches a letter dated July 17, 2018 ("the H&K Letter").  The H&K Letter was Exhibit 1 to the Schneider Complaint (see ¶ 19 thereof).

Therefore, Colony respectfully submits that this Court should consider the H&K Letter to be part of the Schneider Complaint, when adjudicating whether the Schneider Complaint states a Claim within the scope of coverage.

## FACTS

Pine acquires, manages and develops rental apartment buildings that are held by various limited liability corporations ("LLC's") (complaint[2] ¶¶ 2,5).  Pine and Colony entered into a claims-made liability insurance contract, designated as Real Estate Developers PROtect Professional Liability Insurance Policy No. RE4202378-0, for the Policy Period of August 1, 2018 to December 1, 2019 (the "Policy"; complaint, Exhibit 1), with Policy limits of $1 million per Claim and in the aggregate (with defense costs within limits).  The Retroactive Date on the Policy is March 1, 2016.  The Policy provides insurance coverage to Pine and various individual insureds, subject to all of its terms, conditions, and exclusions, for Claims of professional liability in connection with "Real Estate Development Services."[3]

---

[2] References to "complaint" refer to the complaint in this action.
[3] For purposes of this motion, Colony does not dispute that the Schneider Action alleges Real Estate Development Services.

On July 26, 2019, Jerome Schneider, on behalf of the members of ten LLC's holding real estate parcels as assets, filed the Schneider Action in the Supreme Court of the State of New York against Pine and others, with the caption *Schneider, et al. v. Pine Management, Inc. et al.*, No. 654303/2019 (Sup. Ct. New York Cty.) (complaint, Exhibit 2).  The Schneider Complaint sets forth ten causes of action in 65 pages and 427 paragraphs, not including exhibits.  Those causes of action include breach of contract, breach of fiduciary duty, the inspection of books and records and an accounting.  Specifically, the Schneider Complaint alleges, among other things, that Pine purportedly paid itself management fees without approval, prevented the members from voting on matters involving substantial expenditures of money and that required member approval, and failed to produce documents reflecting the financial condition and affairs of the LLC's.  The Schneider Complaint seeks injunctive relief, declaratory relief, and damages.

Exhibit 1 to the Schneider Complaint is a letter from Mitchell Geller of the firm Holland & Knight, dated July 17, 2018, to Bob Goldberg of the firm Meister Seelig & Fein ("the H&K Letter").  This letter sets the stage for the Schneider action, setting forth the claims that will be made therein and demanding relief from Pine.  It is to be noted that this letter pre-dated the inception date of the Colony policy by two weeks.

Pine provided notice of the Schneider Action to Colony and sought insurance coverage under the Policy (complaint ¶ 45).  Colony carefully analyzed the legal and factual issues that were raised by the Schneider Action, and determined that the allegations of the complaint fell entirely outside the scope of the coverage that was provided by the Policy.  Accordingly, on August 20, 2019, Colony disclaimed any obligation of defense and indemnity to Pine for the Schneider Action (complaint ¶ 46).

In the pages that follow, Colony will demonstrate as a matter of law that, based entirely on the Schneider Complaint and the exhibits thereto, the Policy does not cover the Schneider Action.  This is true based on three independently meritorious coverage defenses, each of which is sufficient to defeat Pine's claims for coverage, and which cumulatively leave no doubt that Colony is entitled to judgment on the pleadings. Those three defenses are:

1. The H&K Letter is a "Claim" prior to the policy period.

2. Pine was aware, prior to the policy period, that it had committed "Wrongful Acts."

3. The "Wrongful Acts" are deemed all to have been committed prior to the Retroactive Date.

## PERTINENT POLICY PROVISIONS

The Colony policy is a professional liability insurance policy for real estate developers. The pertinent insuring agreement, in Section I – Coverages, provides that:

> The Insurer agrees to pay on behalf of the Insured, Loss in excess of the Deductible amount and up to the Limits of Liability shown in item 4 of the Declarations; provided that such Loss results from a Claim first made and reported in writing during the Policy Period or Extended reporting Period, if applicable, arising out of a Wrongful Act committed before the end of the Policy Period and on or after the Retroactive Date, if any, shown in item 8 of the Declarations.

In other words, two things are necessary in order to trigger coverage: (1) a Claim which is first made and reported during the policy period or the extended reporting period, and (2) a Wrongful Act committed between the Retroactive Date and the end of the policy period.  If both of these requirements are not satisfied, there can be no coverage.

In Section II - Limits of Liability and Deductible, the Colony policy provides that:

> Defense Costs are part of and not in addition to the Limit of Liability.  Payment of Defense Costs by the Insurer will reduce, and may exhaust, the Limits of Liability.

4

Certain definitions, from Section III – Definitions, are pertinent.  A "Wrongful Act" means:

> … any actual or alleged act, error, omission, or breach of duty by any Insured in the rendering or of failure to render Real Estate Development Services…

"Real Estate Development Services" means:

> … the following services performed by or on behalf of any Insured in the course of improvement of real property acquired by the Insured, whether alone or as part of a partnership, joint venture, syndication, or other arrangement:…

> 2.  services performed while acting as a real estate agent, title agent, notary republic, mortgage broker, property manager, construction manager, or general contractor, if performed as part of the services as a real estate developer for the same improvement of real property…

For purposes of this motion, Colony does not dispute that Pine was engaged in "Real Estate Development Services."

A "Claim":

> … means any of the following arising from a Wrongful Act:

> 1.  a written demand received by any Insured for monetary, non-monetary or injunctive relief, including a written demand that the Insured toll or waive a statute of limitations…

Finally, in Section VI – General Conditions, the policy provides, under the heading "Multiple Wrongful Acts, Claims or Claimants":

> Two or more Claims arising out of a single Wrongful Act, or any series of related Wrongful Acts, will be considered a single Claim. Each Wrongful Act, in a series of related Wrongful Acts, will be deemed to have occurred on the date of the first such Wrongful Act.

Additional pertinent policy provisions will be set forth below at the appropriate juncture.

## LEGAL ANALYSIS

## STANDARDS FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

Motions for judgment on the pleadings are not granted cavalierly, but as a decision from this District less than four months ago demonstrates, a court will not hesitate to grant such a motion when a case very similar to the case at bar comes before it. *North River Ins. Co. v. Leifer,* 2022 U.S. Dist. LEXIS 75134 (S.D.N.Y. April 25, 2022). Like the case before this Court, *Leifer* was an action for insurance coverage under a professional liability policy, and as will be shown below, the court granted judgment on the pleadings to the insurer in the *Leifer* case on precisely one of the three grounds that Colony urges herein.

When deciding a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standard that is applicable to a Rule 12(b)(6) motion to dismiss. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). Like a motion under Rule 12(b)(6), a motion under Rule 12(c) may be filed before discovery is complete. *See* Fed. R. Civ. P. 12(c); *Lively*, 6 F.4th at 301.

"To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

In assessing whether the Complaint plausibly pleads a cause of action, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable

inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678. However, "that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (*quoting Iqbal*, 556 U.S. at 678); *see also Sarikaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 104 (S.D.N.Y. 2019). Similarly, the court need not defer to sweeping, unsupported conclusions made on information and belief, in evaluating the sufficiency of the complaint. *See Freydl v. Meringolo*, 2010 WL 3026578, at *4 (S.D.N.Y. 2010). Further, "on a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Sarikaputar*, 371 F. Supp. 3d at 104 (internal quotations omitted).

Colony will show that the complaint in this action fails to state a claim which is plausible on its face. Even accepting all of the allegations in that complaint as true, and drawing all reasonable inferences in favor of the plaintiff, that complaint fails, as a matter of law, to state a claim that plausibly suggests that Pine is entitled to relief. That is because the Schneider Complaint fails to state a Claim that is even plausibly within the scope of the coverage of the Policy. See *Leifer, infra.* Colony therefore respectfully requests that this Court enter judgment on the pleadings in its favor.

# I.

## FIRST DISPOSITIVE COVERAGE DEFENSE:  CLAIM PRIOR TO THE POLICY PERIOD

It was shown above that coverage under the Colony policy can exist only if a Claim is first made and reported during the policy period or the extended reporting period.  That is to say, in this case, there can be no coverage for a Claim that was first made before the policy incepted on August 1, 2018.

In this case, the H&K Letter was forwarded to Pine, by overnight courier and email, on July 17, 2018.  That Letter meets the definition of a "Claim."  Therefore, there is no coverage.

To begin with, Mitchell Geller, the author of the H&K Letter, characterized his own letter as constituting "claims."  The following appears on page 2 (emphasis added):

> We include this detailed examination of New York law on a member's **claims** against a manager or managing member and a member's rights under the New York Limited Liability Company Law ("LLCL") to expedite your analysis of our clients' **claims** and to bring about a mutually satisfactory resolution of these **claims** without having to commence litigation that would be costly to all parties involved [emphasis added].

In fact, the H&K Letter refers to the allegations therein as "claims" on no fewer than seven occasions.

A "**Claim**" under the policy is

> a written demand received by any **Insured** for monetary, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitation.

The H&K Letter is indubitably a "Claim."  That is so because:

1.      The H&K Letter contains a Claim for an accounting (heading "D" on page 5 and item 4 of the list on page 11).  This a demand for non-monetary relief.  Alternatively, the only reason that the Schneider plaintiffs would demand an accounting is to make a Claim for monetary relief.

2.      The H&K Letter contains a demand for the payment of fees.  See, for example, the allegations that (i) "total management fees" in the amount of $622,742 were paid to Pine in 2017, that (ii) "Pine cannot receive any compensation for its services unless approved by [a] vote," and that (iii) "Pine has no right to receive fees for its services in connection with its management of the LLC's" (page 7).  This is tantamount to a demand for monetary relief.

3.      The H&K Letter includes numerous demands that Pine produce several categories of documents.  See, for example, the list of 10 categories of documents that are demanded on page 11, in clause (e) on page 13, and the allegation that "Pine's refusal to produce the requested documentation is contrary to its fiduciary duty to provide material facts to the members of the LLC's" (page 12).  This is a demand for non-monetary and/or injunctive relief.

4.      The H&K Letter "suggest[s] that a meeting be scheduled to resolve the Schneider/Schwartz Group's concerns" (page 13).  A request for a meeting at which money will be demanded constitutes a Claim.

5.      The H&K Letter states that its goals include to resolve the dispute "without having to commence litigation that would be costly to all parties involved" (page 2).  It threatens that "if Pine refuses to permit the Schneider/Schwartz Group or its representatives to examine and make copies of the foregoing documents, the Schneider/Schwartz Group can commence an action" (page 12).   Further, the H&K Letter suggests that a mutually satisfactory resolution of the issues "is preferable to a costly and unnecessary litigation" (page 13).

Those portions of the H&K Letter that (1) ask for an accounting, (2) demand the payment of fees, (3) demand production of documents, (4) request a meeting, and (5) suggest the possibility of litigation, are each sufficient to justify the characterization of the H&K Letter as a "Claim," and their aggregate effect is more than sufficient to justify such a characterization.

The decision by the Second Circuit in *Weaver v. Axis Surplus Ins. Co.,* 639 Fed. Appx. 764 (2d Cir. 2016), *aff'g* 2014 U.S. Dist. LEXIS 154746 (E.D.N.Y. 2014), is instructive.  In *Weaver*, the Attorney General of Maryland had sent a letter to the insured, demanding that it produce certain documents and that it cease all offers and sales of a business opportunity.  The letter stated that if the insured did not comply, the Attorney General may proceed with "more

formal legal action." Dist. Ct. Op. at 7. The Second Circuit ruled that the letter, particularly the

threat of "more formal legal action," was a "demand" (undefined in the policy):

> This was sufficient to make the November 2007 Letter a "demand"
> because it set forth the Division's request under a claim of right,
> including its entitlement to the documents identified therein, and
> put [the insured] on notice of the legal consequences of any failure
> to comply.

639 Fed. Appx. at 766. To the same effect is the Appellate Division's ruling in *McCabe v. St.*

*Paul Fire & Marine Ins. Co.,* 79 A.D.3d 1612, 1614, 914 N.Y.S.2d 814, 816 (4th Dep't 2010):

> Plaintiffs' January 2, 2007 letter to Fretz constitutes a claim
> against Fretz under the terms of the policy [citation omitted].
> Although plaintiffs did not specifically request monetary damages
> in that letter, they demanded that Fretz rectify their problem.

In *Seneca Insurance Co. v. Kemper Ins. Co.,* 133 Fed. Appx. 770 (2d Cir. 2005), *aff'g*

2004 U.S. Dist. LEXIS 9159 (S.D.N.Y. 2004)*,* the claimant sent the insured a letter requesting a

meeting. The district court wrote (p. 6) that

> although counsel did not specifically state that the purpose of the
> meeting was to demand money damages or other relief, the
> implication is that counsel requested the meeting for this
> reason….Based on these facts, the letter constitutes a written
> demand…Accordingly, the…letter is a 'claim.'

Here, too, the H&K Letter expressly requested non-monetary relief, and "the implication

is that counsel requested the meeting for this reason" – that is, to demand monetary relief. It

states that "Pine cannot receive any compensation for its services unless approved by [a] vote,"

and as in *Seneca,* the clear implication is that the LLC's are demanding that money back. The

*Seneca* decision also held a threat to "proceed accordingly" (referring to litigation) was an

element in establishing that a letter was a "claim." Based on these cases, the H&K Letter is a

"Claim," and it was made prior to the Colony policy period.

And there is no question that the allegations in the H&K Letter are the predicate of the Schneider Action.  On page 1 of the H&K Letter, Mr. Geller summarizes the Schneider/Schwartz claim as follows:

> (a) Pine has breached its fiduciary duty to the Schneider/Schwartz Group and has not acted in good faith; (b) Pine has breached provisions of the governing Operating Agreements; (c) Pine has failed to disclose materials facts to the Schneider/Schwartz Group; (d) Pine has been involved in related party transactions; and (e) Pine has failed to provide key documents concerning the management and operation of the LLC's to the Schneider/Schwartz Group.

Paragraph 1 of the Schneider Complaint summarizes the allegations against Pine as follows:

> (a) has breached provisions of the governing Operating Agreements; (b) has breached its fiduciary duty as Manager to the Plaintiffs and has not acted in good faith; (c) has failed to disclose material facts and key documents concerning the management and operations of the LLCs to the Plaintiffs; (d) has engaged in self-dealing transactions such as the payment of "management fees" and "construction management fees" from the LLCs to itself in violation of the governing Operating Agreements and without approval from the Plaintiffs; and (e) has been involved in related party transactions and approved loans to certain of the limited liability companies from members of the limited liability companies or persons or entities affiliated with Pine Management without authorization from, or an affirmative vote of, a majority in interest of the Members of such LLCs.

Four of the five allegations in the summary of the allegations in the Schneider Lawsuit are very similar, and in some instances are almost verbatim, to the summary of the "Claims" in the H&K Letter.  And while the remaining allegations in the Schneider Lawsuit (that is, that Pine has engaged in self-dealing transactions such as the payment of "management fees" and "construction management fees" to itself) is not listed as one of the categories of "Claims" in the H&K Letter, it was certainly alleged in the H&K Letter.  Namely, the section heading on page 7 of the H&K Letter reads "Pine Has No Authority to Pay Itself Fees Without The Approval of the

Schneider/Schwartz Group," and that section expressly charges that "Pine is paid a 'management fee' and a 'construction management fee.'"   In fact, ¶ 19 of the Schneider Complaint states that the H&K Letter, and subsequent letters from Holland & Knight, set forth the legal basis for the claims in the Schneider Action.

In light of the above, it is clear that the allegations of the H&K Letter are essentially indistinguishable from those in the Schneider Action.

As such, the H&K Letter of July 17, 2018 is a "Claim," made against Pine prior to the Colony policy period of August 1, 2018 to December 1, 2019.  The Schneider Action is not covered.

## II.

## SECOND DISPOSITIVE COVERAGE DEFENSE:  PRIOR KNOWLEDGE OF WRONGFUL ACT

Pursuant to SECTION IV – EXCLUSIONS, Section A, the Colony Policy does not apply to any Claim:

> A…….arising out of a **Wrongful Act**… occurring prior to the **Policy Period** if, prior to the effective date of the first Architects & Engineers Professional Liability Insurance Policy[4] issued by the **Insurer** to the **Named Insured** and continuously renewed and maintained in effect prior to the **Policy Period**:…
>
> > 2.  Any **Insured** had a reasonable basis to believe that the **Insured** had committed a **Wrongful Act**…

The first professional liability insurance policy issued by Colony to Pine incepted on August 1, 2018.  Prior to that date, Pine "had a reasonable basis to believe that [it] had committed a Wrongful Act."  In fact, Pine had more than a mere "reasonable basis" to believe

---

[4] Should read "Real Estate Developers PROtect Professional Liability Insurance Policy."

that.  It had absolutely certainty that it had committed a Wrongful Act.  This being so, coverage for the Schneider Action is excluded.

As was quoted above, the Colony policy defines "Wrongful Act" as (with emphasis added):

> … any actual or *alleged* act, error, omission, or breach of duty by any Insured in the rendering or of failure to render Real Estate Development Services…

Any *allegation* that Pine committed an "act, error, omission or breach of duty… in the rendering or of failure to render Real Estate Development Services," no matter its veracity or merit, is defined by the Colony policy as a Wrongful Act.  For ease of reference, this exclusion will be referred to below as the "Prior Knowledge Exclusion."

With this in mind, the applicability of the Prior Knowledge Exclusion is obvious.  The H&K Letter, which is an exhibit to the Schneider Complaint and hence is a part of that complaint for all purposes, is dated two weeks prior to the inception of the Colony policy.  That letter contains, at a minimum, numerous allegations of *alleged* acts, errors, omissions, or breaches of duty by Pine.  Whether or not those allegations have merit, the H&K Letter provided Pine with a reasonable basis to believe, prior to the effective date of the Policy, that it had committed a Wrongful Act, which includes an "alleged" act, error, omission or breach of duty.

An allegation of an "act, error, omission or breach of duty" need not have merit in order to be a Wrongful Act.  In *Quanta Lines Ins. Co. v. Investors Capital Corp.,* 2009 U.S. Dist. LEXIS 117689 (S.D.N.Y. 2009), the definition of "claim" included "an actual or alleged wrongful act."  In that case, a letter accused the insured of a wrongful act, but it was subsequently withdrawn because it included a factual error.  The court nevertheless concluded

that the erroneous letter was a "claim" because even though it was factually inaccurate and would not be sustained, it set forth an "alleged," albeit non-meritorious, wrongful act.

Colony is aware that, in order for this exclusion to apply, New York courts require a policyholder to have both objective and subjective knowledge that it committed a Wrongful Act. *Liberty Ins. Underwriters v. Corpina Piergrossi Overzat & Klar,* 78 A.D.3d 602, 913 N.Y.S.2d 31 (1st Dep't 2010). But that test is plainly satisfied here. Pine cannot deny that, in view of the H&K Letter, it had both objective and subjective knowledge that it had committed an *alleged* "act, error, omission or breach of duty… in the rendering or of failure to render Real Estate Development Services." And in addition, that Letter contains a threat to commence litigation, which establishes subjective knowledge as a matter of law. And objectively, the only possible reading of the H&K Letter is that Pine had committed alleged acts, errors, omissions or breaches of duty in its Real Estate Development Services. Regardless of whether those allegations in the H&K Letter are meritorious, and regardless of whether Pine objectively or subjectively believed that it had *actually* committed those acts, Pine knew, both subjectively and objectively, that it had been charged with "alleged" acts, errors, omissions, or breaches of duty.

Less than four months ago, in *Leifer*, *supra*, this District granted judgment on the pleadings on this precise issue. In that case, prior to the period of his professional liability policy, the insured attorney had failed to serve an answer on behalf of his client. A default judgment was taken against the client. The client filed a legal malpractice suit against the insured attorney while the policy was in effect, and the insured sought coverage under the policy for the suit.

The insurer disclaimed coverage based on the Prior Knowledge Exclusion, given that the insured knew, before the policy incepted, that he had committed malpractice. The insurer then

commenced a coverage action, and moved for judgment on the pleadings on the ground of this exclusion.

As to the subjective test, the insured argued that he did not subjectively anticipate being sued, due to his friendship with his client.  The court rejected that argument:

> … the subjective test does not require the insured to believe that a claim is likely [quoting *Quanta Lines*, *supra*].  This prong simply requires that the insured know the facts underlying the eventual malpractice claim.

Likewise, the insured argued that he did not objectively anticipate the suit, because his client had refused to retain him for the purpose of interposing an answer.  This district rejected this argument as well.

> The question in this case is whether a reasonable attorney would have thought that these facts *could* give rise to a malpractice claim [citing *Quanta Lines,* supra]….a reasonable attorney would certainly anticipate that if no answer was filed at all, there would be some possibility of a future malpractice claim…

(Emphasis in original).  This District held that the Prior Knowledge Exclusion applied as a matter of law, and granted the motion for judgment on the pleadings.

It is plain that, upon its receipt of the H&K Letter, Pine was aware, both objectively and subjectively, that it had committed a "Wrongful Act" as the term is defined in the Policy.  Accordingly, the Prior Knowledge Exclusion is applicable, and precludes coverage for Pine in connection with the Schneider Action.  As in *Leifer,* Colony is entitled to judgment on the pleadings.

## III.

## THIRD DISPOSITIVE COVERAGE DEFENSE: "WRONGFUL ACTS" PRIOR TO THE RETROACTIVE DATE

It was noted above that one requirement of coverage is that a Wrongful Act must have been committed between the Retroactive Date and the end of the policy period. In the context of the Colony policy, this means that coverage is possible only if a Wrongful Act was committed between March 1, 2016 (the Retroactive Date) and December 1, 2019 (the end of the policy period.  There is no coverage for any Wrongful Act committed before March 1, 2016.

It was also noted above that, pursuant to the Colony policy, that

> Each Wrongful Act, in a series of related Wrongful Acts, will be deemed to have occurred on the date of the first such Wrongful Act.

Thus: *if even a single related Wrongful Act was committed prior to March 1, 2016, then there is no coverage for any related Wrongful Act, even if it was committed after March 1, 2016.*

Let us now turn to the facts of this case, and in particular, the allegations in the Schneider Complaint.  That Complaint contains multiple allegations of Wrongful Acts committed prior to March 1, 2016, all in the course of Pine's Real Estate Development Services.  The following allegations appear in the Schneider Complaint:

1. According to ¶ 13, an "egregious example of Pine Management's breach of the Operating Agreements" is that "during the period September 2015 to June 2019, Pine Management approved loans" "outside the ordinary course of business."

2. It is alleged in ¶ 16 that "Pine Management - without the approval of the Plaintiffs - has paid management fees and construction management fees to itself which exceed $2.4 million for the years 2012 through the first six months of 2019."

3. ¶ 132 alleges that "Commencing in or about 2012 and continuing through the present," Pine dramatically increased cash reserves, dramatically reduced distributions to Members, etc., without appropriate approval.

4. According to ¶159, "Pine neither sought nor obtained the approval of the Plaintiffs in connection with the capital improvements" between 2012 and 2019.

16

5.      ¶¶ 174 – 183 show the alleged 84% decrease in distributions to Members of the LLC's between 2012 and 2018.

6.      ¶ 187 alleges that "during the period between September 2015 to June 2019, Pine Management approved $7,960,000 of loans" to certain of the LLC's, but according to ¶189, no documentation concerning these loans was provided by Pine to plaintiffs.

7.      ¶ 230 alleges that "Pine Management neither sought nor obtained approval" for a 4,339% increase in capital improvements between 2012 and 2019.

8.      According to ¶ 320, "without the approval of plaintiffs," Pine paid itself "management fees" and "construction management fees" in excess of $2.4 million for the years 2012 through 2019.

9.      ¶ 343 alleges that Pine Management improperly approved almost $8 million of loans between September 2015 and June 2019.

There are many other such allegations.  Suffice it to say that the Schneider Complaint is replete with allegations of Wrongful Acts prior to the Retroactive Date.

The fact that the Schneider Complaint also contains allegations of Wrongful Acts after the Retroactive Date cannot salvage coverage for Pine.  As is noted above, the Colony policy contains a provision, standard in professional liability claims made policies, that (1) any series of related Wrongful Acts will be considered a single Claim, and (2) each Wrongful Act, in a series of related Wrongful Acts, will be deemed to have occurred on the date of the first such Wrongful Act.

All of the Wrongful Acts that are alleged in the Schneider Complaint are "related."  They all arose out of Pine's alleged wrongful conduct in providing Real Estate Development Services. The Schneider Complaint treats them largely cumulatively and as a unit.  The allegations by all of the ten LLC's are similar, and arise out of the same series of related "Wrongful Acts".  Thus, the alleged Wrongful Acts are all "related," and it follows that every Wrongful Act, regardless of

when it was allegedly committed, will be deemed to have occurred on the date of the first

Wrongful Act.  And that date was well before the Retroactive Date.

New York courts have found claims to be "related" even when their connection was more

attenuated than the connection between the various Wrongful Acts that are alleged in the

Schneider Complaint.

A particularly good illustration of this rule emerges from the Second Circuit's decision in

*Seneca Insurance Co. v. Kemper Ins. Co., supra,* 133 Fed. Appx. 770 (2d Cir. 2005), *aff'g* 2004

U.S. Dist. LEXIS 9159 (S.D.N.Y. 2004).  In that case, two unrelated plaintiffs, Michael

Gallagher and JES Properties, each sought to organize a horse show, but USA Equestrian denied

them permission to do so because of "mileage conflicts."  Gallagher's counsel wrote to USA

Equestrian, claiming an antitrust violation.  The letter was dated July 6, 2001, at a time that USA

Equestrian was covered by a policy issued by Seneca Insurance Company.  A similar letter on

behalf of both Gallagher and JES, and then a lawsuit on behalf of both plaintiffs, followed, but

the second letter and the lawsuit were dated only *after* the Seneca policy expired.

The Seneca policy had language similar to that of the Colony policy before this Court, in

that interrelated Wrongful Acts were deemed to be one claim, made on the date that the first such

claim was made.  Thus, if the Gallagher and JES claims were interrelated, they would both be

deemed to have been made during the Seneca policy period, even though the JES claim,

considered on its own, clearly post-dated that policy.

The Second Circuit found that the claims were interrelated.  The trial court decision by

the Southern District of New York, which the Second Circuit affirmed "for the reasons stated by

the District Court," held that (p. 5)

> the Gallagher Claim and the JES Claim arise from, at minimum,
> Interrelated Wrongful Acts because they share a sufficient factual

> nexus.  Thus, the Gallagher Claim and the JES Claim are deemed
> to be one claim.  This one claim was first made against USA
> Equestrian on July 6, 2001, the date of the Gallagher Claim…

The Southern District, in its opinion that was adopted by the Second Circuit, recognized (p. 7) that Gallagher and JES had no business connection, that Gallagher and JES submitted applications for shows on different dates and in different locations, and that USA Equestrian's denial of Gallagher's and JES's respective applications were separate and distinct transactions. But that did not matter.  Since the underlying claims shared a factual nexus, they were interrelated.  All the more so here, where all the plaintiffs share a business and familial connection, where all of their Claims are asserted in the same lawsuit (i.e. the Schneider Action), and where all of their Claims indubitably have the same "factual nexus," their Claims are related, and all must be deemed to have occurred prior to Colony's policy period.

The Second Circuit ruled, in *Nomura Holding America v. Federal Ins. Co.,* 629 Fed. Appx. 38, 39 (2nd Cir. 2015), that the relevant inquiry is:

> …whether the underlying claims are based upon, arising from, or
> in consequence of the same or related facts, circumstances,
> situations, transactions or events or the same or related series of
> facts, circumstances, situations, transactions or events…

The Schneider Complaint surely satisfies the *Nomura Holding* test.

In *Greenburgh Eleven Union Free School District v. National Union Fire Ins. Co.,* 304 A.D.2d 334, 758 N.Y.S.2d 291 (1st Dep't 2003), separate lawsuits brought by different school employees, but arising out of the same "disturbances" at a public school, were held to be related.

And in *Zahler v. Twin City Fire Ins. Co.,* 2006 U.S. Dist. LEXIS 14263 (S.D.N.Y. 2006), a securities fraud complaint was served on the insured during the Twin City policy period, and an ERISA complaint was served on it after the policy expired.  Securities fraud and ERISA are very

different kinds of claims, but since they both were predicated upon similar facts, they were deemed to constitute one claim, made during the Twin City policy period.

It can be seen that a general commonality of facts is all that is required in order to make multiple Wrongful Acts "related."  By contrast, only if claims or Wrongful Acts have very different factual geneses will they be held not to be "related."  In *Glascoff v. OneBeacon Midwest Ins. Co.,* 2014 U.S. Dist. LEXIS 64858 (S.D.N.Y. 2014), two suits were found not to be related because one focused on the insured's deficient policies, internal controls, and practices, whereas the other focused on its inducing investors to make a bad investment.  There was no similarity of facts between those claims.  In *National Union Fire Ins. Co. v. Ambassador Group,* 691 F. Supp. 618 (E.D.N.Y. 1988), four suits were held not to be interrelated, since they involved the distinct claims of (1) failing to disclose information, (2) inducement to sell insurance policies in reliance on false financial statements, and (3 and 4) negligent mismanagement of two separate companies. Again, the factual nexus was absent.

But in the case at bar, all of the Wrongful Acts against Pine are related.  The ten LLC's are treated collectively, not individually; indeed, ¶ 1 of the Schneider Complaint refers to them as mere "nominal defendants."  The various LLC "Operating Agreements" are fungible, and are treated as a unit.  See, e.g., ¶ 14 ("Pine Management's failure to comply with the provisions of the governing Operating Agreements"); ¶ 92 ("The terms of the Operating Agreements of [eight of the LCC's] are virtually identical"); ¶ 306 ("Pine Management is the Manager of [eight of the LLC's]").

The Wrongful Acts against Pine all spring from similar facts, namely, they arose from Pine's alleged wrongful conduct in providing Real Estate Development Services.  All of the Wrongful Acts are asserted in the same complaint, and the Schneider Complaint treats them all

as related.  The Wrongful Acts all center on allegedly unauthorized fees, allegedly unauthorized

capital expenditures and loans, inadequate distributions to the LLC's, etc.  And, in all cases, they

span the time period from 2012 (four years before the Retroactive Date) to 2019.  Thus, they

must all be deemed to have been committed prior to the Retroactive Date of the Colony policy.

No Wrongful Act was committed on or after the Retroactive Date  of the Colony policy.

There is no coverage under that policy.

## IV.

## NO DUTY TO INDEMNIFY

The analysis set forth above has focused on the absence of Colony's duty to defend and

indeed, it may be that Pine's defense costs will exceed the limit of Colony's policy, rendering

consideration of the duty to indemnify moot.  In any event, a finding by this Court that Colony

has no duty to defend will also compel the conclusion that Colony has no duty to indemnify.

> Initially we note that the duty to defend is broader than the duty to
> indemnify. Thus, it is unnecessary to engage in a separate analysis
> of [the insurer's] independent claim that it has no duty to indemnify
> apart from both insurers' claims that they have no obligation to
> defend.

*EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990).  Colony has no

duty, of either defense or indemnity, to Pine.

## <u>CONCLUSION</u>

For three independent and sufficient reasons, all based solely on the Schneider Complaint

and its exhibits, the Colony policy does not cover the Schneider Action.  Those reasons are:

- The Claim was made prior to the policy period

- Pine had prior knowledge of the Wrongful Acts before the policy incepted

- The alleged Wrongful Acts occurred prior to the Colony policy's Retroactive

  Date

Colony respectfully submits that it is entitled to judgment on the pleadings, and it asks this Court to enter judgment in its favor:

1. Dismissing the complaint with prejudice;

2. As requested in Colony's Counterclaims, declaring that Colony has no obligation of coverage to Pine, in whole or in part, in connection with the Schneider Action; and

3. Granting such other and further relief as seems appropriate to the Court.

Respectfully submitted,

RIVKIN RADLER LLP

By:   *M. Paul Gorfinkel*

M. Paul Gorfinkel, Esq. (MPG 2069)
paul.gorfinkel@rivkin.com
Amanda R. Griner, Esq. (ARG 7625)
amanda.griner@rivkin.com
926 RXR Plaza
Uniondale, New York 11556-0926
Phone: (516) 357-3000
Fax: (516) 357-3333

Attorneys for Defendant
Colony Insurance Company

Dated:  Uniondale, New York
          August 9, 2022