USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/20/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PINE MANAGEMENT, INC.,

                Plaintiff,

-against-

COLONY INSURANCE COMPANY,

                Defendant.

1:22-cv-02407 (MKV)

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Pine Management, Inc. ("Pine") seeks coverage from Defendant Colony Insurance Company ("Colony") under a professional liability insurance policy for an underlying lawsuit against Pine. Colony moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), contending that the underlying lawsuit falls entirely outside of the scope of coverage provided by the Colony Policy. For the following reasons, the motion is GRANTED.

## BACKGROUND[1]

### I. The Underlying Litigation

Pine manages, develops, and acquires rental apartment buildings. Complaint ¶ 2 ("Compl.") [ECF No. 1]. On July 26, 2019, Jerome Schneider filed a complaint ("the Schneider Complaint") in New York state court on behalf of the members of ten Limited Liability Companies ("LLCs") managed by Pine, asserting claims against Pine and others ("the Schneider Action"). Compl. ¶¶ 28, 29. The Schneider Complaint alleges ten causes of action, including breach of contract, breach of fiduciary duty, inspection of books and records, and an accounting. *See* Compl.

---

[1] The facts are taken from the Complaint, and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

¶ 29; Compl. Exhibit 2 ("Schneider Compl.") [ECF No. 1-2].  The Schneider Complaint seeks damages, in addition to injunctive and declaratory relief.  *See* Schneider Compl.

The first exhibit attached to the Schneider Complaint is a July 17, 2018 letter from Michael Geller of the law firm Holland & Knight ("HK Letter").  *See* Answer Exhibit 1 ("HK Letter") [ECF No. 11-1].[2]  The HK Letter "advise[d] [Pine] of claims by the Schneider/Schwartz Group against Pine."  *See* HK Letter 1.

## II.     The Colony Policy

Pine provided notice of the Schneider Complaint to Colony under a Real Estate Developers PROtect Professional Liability Insurance policy ("the Colony Policy" or "the Policy"), with a Policy Period of August 1, 2018 to December 1, 2019, and a Retroactive Date of March 1, 2016. Compl. ¶¶ 1, 14, 25; Complaint Exhibit 1 ("Policy") [ECF No. 1-1].  The Colony Policy provides coverage for claims in connection with "Real Estate Development Service[s]."[3]  Policy Item 3.

The Policy states that Colony "agrees to pay on behalf of [Pine], Loss in excess of the Deductible amount and up to the Limits of Liability . . . provided that such Loss results from a Claim first made and reported in writing during the Policy Period . . . [and] aris[es] out of a Wrongful Act committed . . . on or after the Retroactive Date" and "before the end of the Policy Period."  Compl. ¶ 15; Policy I.A.1.  The Policy defines a "Claim" as "a written demand received by [Pine] for monetary, non-monetary or injunctive relief."  Compl. ¶ 16; Policy III.B.1.  It also states that "[t]wo or more Claims arising out of a single Wrongful Act, or any series of related

---

[2] The parties have stipulated that the Complaint in this action shall be deemed to include the Schneider Complaint and all exhibits that were attached to it, including the HK Letter.  *See* Proposed Stipulation and Order ¶ 3 [ECF No. 21].  Accordingly, the Court may consider the HK Letter in evaluating this Rule 12(c) motion.

[3] For purposes of this motion, Colony does not dispute that the Schneider Complaint alleges claims based on Pine's "Real Estate Development Services."  Memorandum of Law in Support [ECF No. 25] at 2 n.3.

2

Wrongful Acts, will be considered a single Claim" and each Wrongful Act "will be deemed to have occurred on the date of the first such Wrongful Act." Policy VI.C.

Finally, a "Wrongful Act" is defined as "any actual or alleged act, error or omission, or breach of duty by [Pine] in the rendering or failure to render Real Estate Development Services." Compl. ¶ 17; Policy III.II. The Colony Policy expressly *excludes* from coverage any Claim "arising out of a Wrongful Act . . . occurring prior to the Policy Period if, prior to the effective date . . . [Pine] had a reasonable basis to believe that [it] had committed a Wrongful Act." Compl. ¶ 21; Policy IV.A.2.

### III. Pine's Claim for Coverage

Colony disclaimed any obligation of defense or indemnity for the Schneider Action. Compl. ¶ 46. Pine then filed this Complaint against Colony in March 2022, alleging breach of contract. Compl. ¶¶ 64–78. Pine seeks damages and a declaration that Colony has a duty to defend and to indemnify in the Schneider Action. Compl. ¶¶ 54–63, 78.

Colony moves for judgment on the pleadings under Rule 12(c). *See* Motion for Judgment on the Pleadings [ECF No. 23]; Memorandum of Law in Support [ECF No. 25] ("Def. Mem."). Pine opposed. *See* Memorandum of Law in Opposition [ECF No. 26] ("Pl. Opp."). Colony replied. *See* Reply Memorandum of Law in Support [ECF No. 28].

## LEGAL STANDARD

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is identical to the Rule 12(b)(6) standard. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). The Complaint therefore "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

3

liable for the misconduct alleged." *Id*. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. On a Rule 12(c) motion, the Court "considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Sarikaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 104 (S.D.N.Y. 2019) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

## ANALYSIS

The Policy provides Pine with both defense and indemnity coverage. Colony raises three, independently sufficient reasons, for why there is no possibility of coverage here. Although a motion for judgment on the pleadings is "an unusual procedural posture for a duty to defend case," the Court agrees that the express provisions of the Colony Policy preclude any coverage, defense, or indemnity, in connection with the Schneider Complaint. *Suez Treatment Sols., Inc. v. ACE Am. Ins. Co.*, No. 1:20-CV-06082 (MKV), 2022 WL 954601, at *1 (S.D.N.Y. Mar. 30, 2022). As such, there is no duty to defend or to indemnify. *See EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990).

### I.     The Claim Was Not Made and Reported During the Policy Period

The Colony Policy provides coverage for "Claims first made and reported in writing during the Policy Period." Compl. ¶ 15; Policy I.A.1. Colony argues that the Schneider Action is outside the scope of coverage because the HK Letter, which was sent on July 7, 2018, constitutes a "Claim" that was first made *before* the policy incepted on August 1, 2018. Def. Mem. 8–12.

a.     *The HK Letter is a "Claim"*

A "Claim" is defined by the Policy as "a written demand received by [Pine] for monetary, nonmonetary, or injunctive relief." Compl. ¶ 16; Policy III.B.1. The HK Letter plainly meets this

4

definition of a "Claim."  In the letter, Schneider's counsel "advise[d] [Pine] of claims by the Schneider/Schwartz Group against Pine." *See* HK Letter 1.  Counsel contends that "there are many serious issues arising from Pine's management . . . and such claims should survive a motion to dismiss and a motion for summary judgment."  HK Letter 2.  Counsel then detailed a number of allegations, including that Pine "breached its fiduciary dut[ies], "ha[d] not acted in good faith," "breached provisions of the governing Operating Agreements," "failed to disclose material facts," was "involved in related party transactions," and "failed to provide key documents."  HK Letter 1.  The HK Letter also alleges that Pine was paid $622,742 in fees in 2017, despite the fact that Pine had "no authority to pay itself fees."  HK Letter 7.  The HK Letter requests non-monetary relief in the form of an accounting and demands ten categories of documents for inspection.  *See* HK Letter 5, 11.  Finally, counsel "suggest[s] that a meeting be scheduled to resolve the Schneider/Schwartz Group's concerns," in an effort to "bring about a mutually satisfactory resolution of these claims without having to commence litigation that would be costly to all parties involved."  HK Letter 2, 13.

  Pine provides several theories for why the HK Letter is not a "Claim."  None succeeds.  First, Pine contends that the HK Letter simply "recite[s] . . . point[s] of law" and "requests to review documents."  Pl. Opp. 6.  However, Second Circuit precedent indicates that a letter "set[ting] forth [a] request under a claim of right, including [an] entitlement to the documents identified" is sufficient to put an insured "on notice of the legal consequences of any failure to comply."  *Weaver v. Axis Surplus Ins. Co.*, 639 F. App'x 764, 766–67 (2d Cir. 2016).  Moreover, even where monetary damages are not "specifically request[ed]," a "demand[] that [an insured] rectify [a] problem" can be sufficient to constitute a claim.  *McCabe v. St. Paul Fire & Marine Ins. Co.*, 79 A.D.3d 1612, 1614, 914 N.Y.S.2d 814, 816 (4th Dep't 2010).  Here, the HK Letter alleged misconduct, cited theories of liability, referenced legal authority, demanded specific

5

documents, requested an accounting, and suggested a meeting. That is sufficient under New York law to constitute a claim.

Pine next attempts to characterize the HK Letter as using "precatory language," which failed to put Pine "on notice of the drastic legal repercussions that could result from noncompliance." Pl. Opp. 7 (citing *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 246 (2d Cir. 1996)). But this assertion is contradicted by the plain language of the Letter, which explicitly mentions litigation and hypothesizes that the claims should survive pre-trial motion practice.

Finally, Pine attempts to manufacture a dispute of fact by asserting that what the requested meeting might "entail goes unstated in the [HK] letter." Pl. Opp. 8. But no such statement is necessary. "Although counsel did not *specifically* state that the purpose of [the requested] meeting was to demand monetary damages or other relief, the implication" of the HK Letter "is that counsel requested the meeting for this reason." *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 CIV. 10088 (PKL), 2004 WL 1145830 (S.D.N.Y. May 21, 2004), *aff'd*, 133 F. App'x 770 (2d Cir. 2005).

      b.     *The Schneider Action and the HK Letter Are a Single "Claim" That Was Not Made During the Policy Period*

Pine does not contest that the HK Letter was a predicate of the Schneider Action, which also indisputably is a Claim. Under the Policy, "[t]wo or more Claims arising out of a single Wrongful Act, or any series of related Wrongful Acts, will be considered a single Claim." Policy VI.C. The Schneider Complaint involves largely the same facts, circumstances, and alleged violations as the HK Letter. *Compare* HK Letter, *with* Schneider Compl. Indeed, the Schneider Complaint itself explains that the HK Letter "discussed in great detail . . . [the] Plaintiffs' claims" against Pine. Schneider Compl. ¶ 19. As such, the Schneider Complaint and HK Letter are "considered a single Claim." That Claim was made *before* the Policy Period—on the date the HK Letter was sent (July 17, 2018). Because the Letter *predated* the Policy Period, the Schneider

Action is not covered by the Colony Policy. This finding is independently sufficient to grant judgment on the pleadings.

## II.     Pine Had Knowledge of an Alleged "Wrongful Act" Prior to the Policy Period

Colony next contends that coverage is precluded because Pine was aware that it had committed a "Wrongful Act" prior to the effective date of the Policy. The Colony Policy expressly excludes from coverage any Claim "arising out of a Wrongful Act . . . occurring prior to the Policy Period if, prior to the effective date . . . [Pine] had a reasonable basis to believe that [it] had committed a Wrongful Act." Compl. ¶ 21; Policy IV.A.2. A "Wrongful Act" is "any actual or *alleged* act, error or omission, or breach of duty by [Pine]." Compl. ¶ 17; Policy III.II (emphasis added).

Under New York law, Pine must have *both* objective *and* subjective knowledge that it had committed a Wrongful Act. *See Liberty Ins. Underwriters, Inc. v. Corpina Piergrossi Overzat & Klar LLP*, 78 A.D.3d 602, 604, 913 N.Y.S.2d 31, 33 (1st Dep't 2010). More particularly, the subjective prong requires *Pine's* knowledge of the relevant facts prior to the effective date of the Policy, while the objective prong requires a showing that *a reasonable insured* might expect such facts to be the basis of a claim. *Id.* at 604–05, 33.

After receiving the HK Letter, Pine was *subjectively* aware that it had committed a "Wrongful Act." As described above, the HK Letter accused Pine of a variety of improper acts and breaches of duty. Those allegations of misconduct—*regardless* of whether they were true or false—put Pine on notice of an *alleged* act, error, omission, or breach of duty. Although Pine argues that the HK Letter did not "provide Pine with a reasonable basis to believe it *actually had committed* an alleged wrongdoing," Pl. Opp. 14–15 (emphasis added), no such showing is necessary where, as here, the Policy defines a "Wrongful Act" as including *alleged* acts. Moreover, the subjective prong "simply requires that the insured know the facts underlying the

7

eventual . . . claim." *N. River Ins. Co. v. Leifer*, No. 21-CV-7775, 2022 WL 1210847, at *2 (S.D.N.Y. Apr. 25, 2022). The subjective prong is therefore satisfied.

For the same reason, the contents of the HK Letter would have informed a reasonable insured that it had committed an *alleged* Wrongful Act. Again, even assuming the allegations were false, a reasonable insured would have been put on notice by the allegations included in the HK Letter and therefore would have "*some* basis to anticipate a claim, regardless of whether the claim [was] likely to be filed or likely to succeed." *Leifer*, 2022 WL 1210847, at *3 (emphasis in original). Pine fundamentally misunderstands the objective prong, providing a smattering of different theories that, it alleges, might "impact a reasonable person's belief" that allegations in the HK Letter "would manifest in[to] a claim." Pl. Opp. 15, 16 (quotations omitted). But whether the claims were *actually pursued* is immaterial—the question is simply whether there was "*some* basis to anticipate a claim." *Leifer*, 2022 WL 1210847, at *3. Because there was "*some* basis" here, the objective prong is satisfied. *Id.*

Pine was subjectively and objectively aware that it had committed a "Wrongful Act" prior to the effective date of the Policy. The Schneider Complaint and HK Letter, which are treated as a single "Claim," are therefore not covered by the Colony Policy. This conclusion, too, is independently sufficient to grant judgment on the pleadings.

### III. The Alleged "Wrongful Acts" Predate the Retroactive Date

Finally, the Policy only provides coverage for a "Claim . . . [that] aris[es] out of a Wrongful Act committed . . . on or after the Retroactive Date" and "before the end of the Policy Period." Compl. ¶ 15; Policy I.A.1. The Policy deems "[e]ach Wrongful Act, in a series of related Wrongful Acts" to "have occurred on the date of the *first* such Wrongful Act." Policy VI.C (emphasis added). Therefore, Colony argues that if even a *single* related Wrongful Act alleged in the

Schneider Complaint was committed *before* March 1, 2016, there is no coverage for *any* related Wrongful Act—even those committed *after* March 1, 2016.

In determining whether two acts are related, the relevant inquiry is "whether the underlying claims are based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." *Nomura Holding America, Inc. v. Fed. Ins. Co.*, 629 F. App'x 38, 40 (2d Cir. 2015) (citation omitted).

The Schneider Complaint alleges a long history of mismanagement by Pine and includes a number of allegations pre-dating March 1, 2016. For instance, it alleges that Pine "breach[ed] the Operating Agreements" by approving loans "outside the ordinary course of business" from September 2015 to June 2019, that Pine "paid management fees and construction management fees to itself" without approval "for the years 2012 through the first six months of 2019," and that, commencing in 2012, Pine dramatically increased cash reserves and reduced distributions to members without approval. Schneider Compl. ¶¶ 13, 16, 132 (internal quotation marks omitted).

In all, the Schneider Complaint alleges a history of business mismanagement by the same entity (Pine) in its operation of the same business (Real Estate Development Services) with the same parties (the Schneider Plaintiffs). Accordingly, the Court concludes that all of the allegations in the Schneider Complaint are "related" because they "are based upon . . . [a] related series of facts, circumstances, situations, transactions or events." *Nomura*, 629 F. App'x at 40.

In response, Pine vaguely contends, without legal authority, that the "trier of fact in the Schneider Action might determine that if Pine committed any Wrongful Act, it was committed after the Retroactive Date." Pl. Opp. 24. That point is irrelevant to the question of whether acts alleged *after* the retroactive date are related to acts that allegedly occurred *before* it.

Lastly, Pine identifies two allegations in the Schneider Complaint that it contends are "not tethered to any other alleged pre-Retroactive Date Wrongful Act." Pl. Opp. at 24. Not so. One allegation addresses Pine's refusal to provide records or to permit inspection of documents in March 2018, but the Complaint alleges a prior history of withholding similar information. *See* Schneider Compl. ¶¶ 406–16. The other allegation—that Pine attempted to amend the Operating Agreements to allow Pine to act as the manager in perpetuity—appears similarly related to the alleged history of Pine's self-aggrandizement and self-dealing. Because all of the Wrongful Acts contained in the Schneider Complaint either precede the Retroactive Date or relate to Wrongful Acts that do, the Colony Policy provides no coverage.

For these three independently sufficient reasons, the Court finds no possibility of coverage under the Colony Policy. Accordingly, Colony has no duty to defend or to indemnify Pine and judgment on the pleadings for Colony is appropriate.

## CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully requested to enter judgment for Colony dismissing the case, terminate docket entry 23, and close this case.

SO ORDERED.

Date:  March 20, 2023　　　　　　　　　　　　　　　　 _____
New York, NY　　　　　　　　　　　　　　　　　　　**MARY KAY VYSKOCIL**
　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**